**UNITED STATES of America, Plaintiff,**

v.

**Rosita Buitrago GUTIERREZ, Defendant.**

**No. 82 CV 1031.**

United States District Court, E.D. New York.

Nov. 6, 1985.

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y. by Igou M. Allbray, Asst. U.S. Atty., for Government.

Stanley A. Landers, Kew Gardens, N.Y., for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

### FACTS AND BACKGROUND

This enforcement action was brought by the government upon defendant's failure to pay a penalty assessed against her for violating a Federal Aviation Administration ("FAA") safety regulation.

The case arises out of events that transpired six years ago. On October 29, 1979 the defendant, Rosita Gutierrez, was en route to visit family and friends in her native Colombia. When she attempted to proceed through the passenger screening checkpoint at John F. Kennedy International Airport, a .380 caliber Kurz automatic pistol and five live rounds of ammunition were discovered concealed in a portable phonograph in the defendant's possession.

Mrs. Gutierrez testified that the phonograph was delivered to her earlier that day by an acquaintance, Dario Diaz, who had asked if she would bring it to his son in Colombia. (Pl.'s Dep. at 13.) Earlier that year, Mr. Diaz had delivered a housecoat to Mrs. Gutierrez's mother in Colombia, and so the defendant consented to return the favor.

When the defendant received the phonograph on the afternoon of her departure day, it was wrapped and screwed shut. She gave it to her son to carry and proceeded directly to the airport. When the weap-

on was discovered, defendant was arrested for Criminal Possession of a Weapon, a violation of the New York State Penal Law. The matter was subsequently presented to a Grand Jury in the Supreme Court of Queens County, who found "no true bill" against the defendant. Thereafter, in November 1979 the FAA notified Mrs. Gutierrez of its decision to investigate whether she had violated 14 C.F.R. § 107.21(a). Pursuant to its investigation the FAA determined that defendant had violated the regulation and was liable for a penalty of $1,000.00. When the defendant failed to pay the fine, the government commenced this enforcement proceeding in April 1982.

Jurisdiction is conferred upon the Court by section 1007(b) of the Federal Aviation Act, codified at 49 U.S.C. § 1487(b), and 28 U.S.C. § 1345. The case is presently before the Court on cross summary judgment motions.

## DISCUSSION

Pursuant to the statutory authority of the Federal Aviation Act of 1958, the FAA is authorized to issue rules, regulations, and minimum standards designed to enhance the safety of civil aeronautics. 49 U.S.C. § 1345 (1982). Section 1471(a) of Title 49 establishes a mechanism to enforce these regulations, providing in relevant part that "[a]ny person who violates (A) any provision of ... this title or any rule, regulation or order issued thereunder ... shall be subject to a civil penalty of not to exceed $1,000."

At issue in this case is an alleged violation of FAA regulation 14 C.F.R. § 107.21(a). That regulation reads:

(a) Except as provided in paragraph (b) of this section, no person may have a firearm ... on or about the individual's person or accessible property—

(1) when performance has begun of the inspection of the individual's person or accessible property before entering a sterile area; ...

The defendant opposes the assessment of the penalty claiming that she did not violate the provisions of the regulation for two reasons. First, and foremost, in an affidavit in support of her motion for summary judgment, defendant states, "I never knew that the package contained any gun.... Certainly the intent of this statute is not to punish, either criminally or civilly, a person with no knowledge of violating it." (Def.'s Aff. at ¶ 5.) Second, defendant argues that the gun was not "accessible" to her as required by the FAA regulation. We address both of these contentions in turn.

## A. 14 C.F.R. § 107.21(a) Imposes Strict Liability

In the interest of advancing certain public policies, Congress has from time to time enacted strict liability statutes. By their terms, liability attaches upon the commission of the acts proscribed regardless of the absence of fault or wrongdoing. Such measures are passed either because the exigencies of social justice necessitate shifting the loss to the party who can best bear the loss, as with workmen's compensation laws, or when certain high risk situations demand it, as when a railroad company is held strictly accountable for fires set by their locomotives. Similar policy concerns underlie such varied measures as the Federal Safety Appliance Act, 45 U.S.C. § 1, *et seq.*, and State dram shop acts. *See, e.g., Konsler v. United States,* 288 F.Supp. 895 (N.D.Ill.1968) (Illinois dram shop act imposes liability without fault and does not require a showing of negligence). At times the unswerving application of these regulations seems harsh and unfair, as may appear in the case at bar. However, the Legislature, in its wisdom, has determined that the overriding public interest in assuring safe air travel offsets any potential unfair individual applications of this statute.

In reviewing the papers filed in connection with this motion, and after conducting an independent search, this Court notes that there is an apparent dearth of caselaw directly on point. The Court, therefore, looked to analogous decisions as persuasive precedent. In *Delta Air Lines, Inc.,* No.

37563, slip op. (C.A.B. Feb. 19, 1981), an Administrative Law Judge confronted a similar issue in deciding whether to assess a penalty under 49 U.S.C. § 1471(a) for Delta's admitted violation of 14 C.F.R. § 252.2 (requiring non-smoking area for all passengers so requesting it). Delta argued that the incidents complained of were at most, "technical violations of an isolated nature and that the Board did not intend that there should be strict liability imposed on carriers for every failure to comply with Part 252." *Delta,* slip op. at 5.

The airline suggested that regardless of the violation, no civil penalties should attach since it would not " 'serve any legitimate regulatory or public interest purpose.' " *Id.* at 6. The Administrative Law Judge, to the contrary, imposed a fine having, correctly we feel, determined that both the "regulation involved here and the statute require strict compliance with the terms of the regulation." *Id.*

▇ Thus, a parsing of the statute and regulation, consideration of the social policy motivating the Legislature, and persuasive judicial reasoning in an analogous case compel the conclusion that regardless of whether Mrs. Gutierrez was cognizant of the gun and ammunition concealed in the phonograph, she is civilly accountable for her action.[1]

B. *Accessible Property*

▇ The defendant also maintains that the phonograph which was wrapped and screwed closed when she received it was not "accessible" property within the meaning of the regulation. Defendant's affidavit in support of her motion for summary judgment avers: "I was not carrying any screwdriver, pliers or wrench. The gun was certainly not 'accessible' to me in the sense that the statute, F.A.A. Section 107.-21, requires." (Def.'s Aff. at ¶ 4.)

This Court finds that defendant has misinterpreted the wording of the regulation.

The word "accessible" does not modify firearm, it modifies property. Mrs. Gutierrez was in possession of the phonograph; it was obtainable by her. Hence, it was accessible to her within the meaning of the word. *See* Webster's New Collegiate Dictionary, p. 5 (1960). The Court concurs with the plaintiff: "[w]hat the statute and regulation reach is the act of having such devices in one's *possession* at the time of being screened for entry into a 'sterile' area. 43 F.R. 60291." (Pl.'s Mem. at 8) (emphasis in original).

Even if the regulation required that the defendant had to be able to reach the gun, her admitted possession of coins or such readily available instruments as in-flight eating utensils would have sufficed to open the phonograph, rendering the gun obtainable, or accessible.

CONCLUSION

Defendant argues that the interests of justice would "be best served if this motion were granted and this complaint dismissed" (Def.'s Aff. at ¶ 6), when, in fact, to do so would be to contravene the Legislative intent and fail to apply the law as written. The Federal Aviation Act was designed "to provide for the regulation and promotion of civil aviation in such manner as to best foster its development and safety." H.R.Rep. No. 2360, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad.News 3741. The purpose underlying the Act prompted the promulgation of strict liability regulations in order to implement the congressional mandate. Defendant in this case violated the terms of one such regulation and, hence, liability attaches.

Therefore, this Court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment.

SO ORDERED.

---

1. In sharp contrast to section 1471 is the succeeding section which imposes criminal liability. Only intentional knowing violations are covered: "Any person who knowingly and willfully violates any provision of this chapter ... shall be deemed guilty of a misdemeanor...." 49 U.S.C. § 1472(a) (1982).